BLOUNT CONSTRUCTION CO., a corporation whose name has been changed and was formerly known as Mid-South Constructors, Inc., Plaintiff,

v.

The HOUSING AUTHORITY OF the CITY OF ATHENS, GEORGIA, Defendant.

Civ. A. No. 556.

United States District Court
M. D. Georgia,
Athens Division.

March 8, 1965.

Denny C. Galis, Erwin, Birchmore & Epting, Athens, Ga., for plaintiff.

Edwin Fortson, Fortson, Bentley & Griffin, Athens, Ga., for defendant.

BOOTLE, District Judge.

For decision now is the defendant's motion for judgment notwithstanding the special verdict:

"Does this contract mean that the plaintiff is entitled to extra compensation for removal of rock as a part of the general excavation work?

"(Answer 'Yes' or 'No') Yes"

A careful study of the evidence before the jury including the contract sued upon, all as illuminated by the cogent argument of able counsel on both sides, convinces this court that this motion must be granted.

Blount Construction Company, formerly Mid-South Constructors, Inc., entered into a written contract with the Housing Authority of Athens, Georgia binding itself to "furnish all labor, material, equipment and services, and perform and complete all work required for the construction" of certain Low Rent Housing Projects, "and related site improvements in strict accordance with the specifications and drawings" prepared by named architects. The contract provided that for its performance the contractor would be paid $1,337,000.00, subject to additions and deductions as provided in the specifications. The contract consisted of: "a. This instrument, b. General conditions, c. Special conditions, d. Technical specifications, e. Drawings."

Plaintiff's bid for the job, after reciting plaintiff's thorough familiarity with local conditions and all contract documents, proposed "to furnish all labor, material, equipment and services required to construct and complete" the projects for the contract price.

The "specifications" made a part of the contract is a document whose pages are not numbered consecutively except as to each separate part thereof and which measures one and one-half inches in thickness. The "General Conditions", paragraph 3 a., page 26, states the "general responsibilities of contractor" in part, as follows:

"Except as otherwise *specifically stated* in the Contract, the Contractor shall provide and pay for all materials, labor, tools, equipment, water, light, heat, power, transportation, superintendence, temporary construction of every nature, taxes legally collectible because of the work, and all other services and facilities of every nature whatsoever necessary to execute the work to be done under the Contract and deliver it complete in every respect within the specified time." (Emphasis added).

The "General Conditions", paragraph 11e., page 37, contains the warranty of the contractor that he has visited the site of the proposed work, has fully acquainted himself with the conditions there existing relating to construction and labor, that he fully understands the facilities, difficulties and restrictions attending the execution of the work under the contract, and that he has thoroughly examined and

is familiar with all the contract documents.

The particular work in controversy in this case is called for by "Division 2—Excavating, Filling and Grading." This work is a part of the general excavating work in that it is not a part of any of the three exceptions enumerated in Division 2, paragraph 1, page 1, said exceptions being: (1) excavation for utilities (sewers, water and gas); (2) excavation in connection with lawns and planting, and (3) excavation in connection with plumbing. The only provision for adjustment of the contract price under Division 2 is found on page 4, in paragraph 7d. thereof as follows: *"Should latent soil or other conditions* require changes, the 'Contract Price' shall be adjusted. (See 'General Conditions')." Turning to the "General Conditions", there is, on page 36, paragraph 10g., a provision for contract price adjustment "if the Contractor encounters at the site (1) subsurface or latent physical conditions differing materially from those indicated in the Contract or (2) unknown physical conditions differing materially from those inhering in work of the character provided for in this Contract * * *." The "conditions" thus described in paragraph 10g. are clearly conditions which differ from those in the plans and drawings and can not be taken as provision for payment for rock encountered in the normal course of excavation. With commendable frankness plaintiff concedes that the physical conditions encountered did not differ materially from those indicated in the contract, and that there were no unknown physical conditions differing materially from those inhering in work of the character provided for in this contract.

Thus we see that the "General Conditions" paragraph 3a., page 26, under "General Responsibilities of Contractor", stipulate in effect that the contractor shall provide all material, labor, services and facilities and deliver the work complete "except as otherwise *specifically stated* in the contract" (emphasis added), and we look in vain for any specific provision in the contract for payment for excavation or removal of rock in the general excavation work.

Specific provision is made in the contract for extra payment for rock excavation in utility trenches. Division 23, paragraph 6h., page 3, says, "if rock, as so defined, is encountered within the limits of trench excavation for utilities hereunder, the Contract Price will be adjusted, (see General Conditions and Special Conditions)." Similarly, in ."Division 22 *Lawns and Planting*", paragraph 4 d. (1) (2) and (3), pages 7 and 8, there is provision for "changes in the work" should rock be encountered in work done under that Division and should its removal be required by the local Authority, and should it "involve(s) additional work".

In this suit the contractor is claiming extra compensation for rock excavation and removal in general excavation, not under changes in the work or under the special provisions for utility trenches or Lawns and Planting. Its claim is that all rock excavation and removal is to be paid for as extra, over and above the contract price, under the terms of the contract although it can point to no provision of the contract which says so. Plaintiff contends that the contract should be construed so as to call for pay for all general rock excavation and removal as extra because (1) there is a unit price for rock removal set forth in the unit price schedule and (2) there is a provision for measurement of rock when encountered.

These contentions we think cannot prevail. The unit prices were set to "be used, where applicable, to determine the equitable adjustment of the contract price in connection with changes or extra work ordered under the contract". (Unit Price Agreement, page 81, and Special Conditions, paragraph 8b., page 70).

Plaintiff's chief and strongest contention is based upon Division 2, page 4, paragraph 7c., which reads in part as follows:

"In each location where rock is encountered: (1) strip all earth and loose material from the surface of the rock,

(2) take a sufficient number of elevations on the rock to permit accurate measurement thereof, and (3) compute the quantity of rock excavation by the usual cross-section practice and in accordance with the rules for measurement set forth in the SPECIAL CONDITIONS. Submit with each claim for rock excavation the computation of the quantity thereof and a plan showing rock elevations before and after excavating."

Plaintiff argues that it would be pointless for the Authority to require contractor to measure the rock in each location where rock is encountered unless the Authority intended to pay for the excavation and removal of such rock. This argument is not convincing. The Authority for a number of reasons might desire to aquire and preserve accurate data as to the nature of the soil upon which it was building. As suggested by its counsel, it might desire this information for some guidance in analyzing costs of the various aspects and divisions of the work included in the lump sum bid. Moreover, under Division 2, paragraph 7d., page 4, taken in connection with General Conditions, paragraph 10g., page 36, the plaintiff might have successfully claimed extra compensation for this excavation and removal of rock had plaintiff encountered at the site "(1) subsurface or latent physical conditions differing materially from those indicated in the Contract or (2) unknown physical conditions differing materially from those inhering in work of the character provided for in this Contract." As above indicated, the contractor expected to find the rock which it found and seeks no relief under the contractual provisions above quoted.

The presence of rock, therefore, as well as the quantity thereof are potentially significant factors. Conceivably, it could have been present in such larger and unexpected quantities as to entitle the plaintiff to make a claim for a price adjustment. It is not surprising, therefore, that the Authority required its measurement when encountered, whether or not any valid claim should be made for its excavation or removal.

Plaintiff seems to read the sentence "Submit with each claim for rock excavation the computation of the quantity thereof and a plan showing rock elevations before and after excavating" as requiring or authorizing plaintiff to submit a claim with respect to each location from which rock is removed. But, of course, it does not say or mean that. It simply means that if there be instances where a plaintiff desired or was entitled to submit a claim for rock excavation any such claim should be accompanied and supported by a computation of the quantity removed and a plan showing rock elevations before and after excavation. As we have seen, there well might have been instances where valid claims might have been made for extra pay for such excavation and removal. For instance, if, under paragraph 10g. of General Conditions, page 36, the contractor had encountered at the site (1) subsurface or latent physical conditions differing materially from those indicated in the Contract or (2) unknown physical conditions differing materially from those inhering in work of the character provided for in this Contract.

At any rate, the language above quoted and upon which plaintiff relies falls far short of "specifically" stating (General Conditions paragraph 3a., page 26) that plaintiff was to be paid for general rock excavation and removal called for by Division 2 of the Contract and since the contract in said paragraph obligated the contractor to "provide and pay for all materials, labor * * * and all other services and facilities of every nature whatsoever necessary to execute the work to be done under the contract and deliver it complete in every respect," and obligated the contractor to do all this for the stipulated contract price "Except as otherwise specifically stated in the contract" no ambiguity exists as to the meaning of the contract in this respect. We agree, therefore, with defendant's contention urged in the pending motion that by its express language the contract limited

extra pay over and above the contract price to those instances for which specific provision was made and there was no specific provision for extra payment for general rock excavation.

Accordingly, defendant's motion for a judgment notwithstanding the verdict is hereby granted and defendant's counsel may prepare and submit an appropriate judgment, after submitting it to plaintiff's counsel, who shall have five days for suggestions as to form.